The First Huntington National Bank *v.* Guyan Machinery Company

(No. 8923)

Submitted October 17, 1939. Decided November 7, 1939.

*Amos A. Bolen, Walter L. Brown* and *Fitzpatrick, Brown & Davis,* for appellant.
*M. O. Litz, Bland & Joyce* and *James E. Greever,* for appellee.

Hatcher, Judge:

This suit involves the responsibility of a parent corporation for its subsidiary.

Guyan Machinery Company, a corporation (hereinafter called Machinery), has, for a number of years, operated a machine shop and sold mining machinery and supplies. In 1935, Machinery ventured the handling of household appliances, in a room apart from its works, under the trade name of Moss Electric Appliance Company. This venture promised success. In the spring of 1936, Moss Electric Appliance Corporation (hereinafter called Ap-

pliance) was chartered and took over the business and assets of the Appliance Company for a consideration of $7,722.37, the amount actually invested. In payment, Appliance delivered its note of $2,658.37 and certificates of its capital stock for the residue to Machinery. The stock was later disbursed to Machinery's stockholders as a dividend. No other stock was ever issued by Appliance, except one share to its manager, W. H. Moss. The two corporations had the same officers and directors, with the exception that Moss was a director of Appliance but not of Machinery. The accounts of the two corporations were kept in the office of Machinery by one of its employees. It paid his full salary. It secured and retained in its own name the lease for the room occupied by Appliance. The latter did not have a bank account until some time early in 1937. Prior thereto, all receipts from its business were deposited in the general bank account of Machinery and all disbursements for it were made by Machinery.

Throughout the year commencing June, 1936, the plaintiff Bank purchased from Appliance, with recourse, a number of conditional sales contracts made with its customers. Bank was influenced to make the purchases by the financial statement of Appliance and not by the connection, even if known, between it and Machinery. Appliance was to collect the sums due on the contracts and remit to Bank.

The business of Appliance was not financially successful. A shortage in its accounts of supposedly $2200.00 was discovered (by whom does not appear) in June, 1937. Following this, Appliance commenced liquidation of its affairs. Since September 1, 1937, the liquidation has been directly in charge of Machinery (through an employee paid solely by it). Counsel for both parties stipulate that Appliance owes Bank a balance of $3,432.60, with interest from October 4, 1937, for collections made and repossessions taken under the sales contracts owned by Bank. Essential details of the liquidation are wanting. There is testimony that sales of merchandise after liquidation

started, approximated $5,000.00, and that on September 10, 1937, Appliance had accounts receivable amounting to $5,773.88. Detailed disbursement of the $5,000.00 is not furnished, and there is no evidence relating to the disposal of the accounts receivable. A representative of Bank testified that on September 22nd the liquidator admitted Machinery had received approximately $1900.00 from the liquidation, and promised to furnish a detailed statement of the liquidation, but did not do so. A subpoena *duces tecum* brought into court the books of Appliance but they do not supply the wanted details. Machinery relies on a ledger account purporting to be that between it and Appliance. The account, however, is incomplete as to the liquidation, is involved and needs detailed explanation. Among the payments entered to third persons, and treated by both counsel as having been made by the liquidator with funds of Appliance, are two payments to Virginian Electric Company, one of $500.00 on September 10, 1937, and one of $1646.27 on December 28, 1937. The evidence discloses that the president of Machinery, though unauthorized, had promised the Electric Company that Machinery would guarantee these payments; and that in joint conference in October, 1937, with a representative of Electric Company and representatives of Bank he said to the former "we will see that your account is paid * * * because of this outstanding guarantee," and to the latter "we are going to pay you if we have to." Bank emphasizes these payments and this conversation as demonstrating that the liquidation was unfair to it because controlled by Machinery to its own advantage.

This suit is maintained by Bank against Machinery on the theory that because of its control and manipulation of Appliance, Machinery is responsible to Bank for the entire sum admittedly due it by Appliance. The circuit court denied Bank relief.

A parental corporation is not necessarily liable for the acts of its subsidiary because of parental control. Powell, Parent and Subsidiary Corporations, sec. 3, pp. 5-6. But if the control is absolute and the subsidiary is manipulated

by the parent for its own purpose, in such manner as to wrong a third person, the parent must answer for the wrong when the subsidiary is unable to do so. *Powell, supra,* sections 12, 14 and 26; Ballantine, Parent and Subsidiary Corporations, 14 Cal. Law Review, 12; *Atwater & Co.* v. *Collieries,* 119 W. Va. 549, 195 S. E. 99. It is clear that Machinery did not permit Appliance to toddle far from the parental knee. It is also clear that this restraint worked no injury to Bank prior to the liquidation of Appliance. But it is equally clear that Bank makes a *prima facie* case of *pro tanto* injury, caused by Machinery's control of the liquidation. The extent of that injury does not appear. So the decree is reversed, and the cause remanded for further development respecting the liquidation.

*Reversed and remanded.*